IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM BUSH                              )
   945 530th Street                       )
   Cleghorn, IA  51014                    )
   (712) 229-9670                         )
                       )
     Plaintiff,                          )
                       )
       v.                              )
                       )
UNITED STATES                            )
DEPARTMENT OF AGRICULTURE                 )
   1400 Independence Ave., SW             )
   Washington, DC  20250                  )
                       )
      and                             )
                       )
UNITED STATES OF AMERICA                  )
   555 4th Street, NW                     )
   Washington, D.C. 20530                 )
                       )
     Defendants,                         )
                       )

Case: 1:20-cv-00068    (I Deck)
Assigned To : Nichols, Carl J.
Assign. Date : 1/8/2020
Description: FOIA/Privacy Act

## COMPLAINT WITH CLASS ACTION ALLEGATIONS FOR DECLARATORY AND INJUNCTIVE RELIEF


RECEIVED
Mail Room

JAN - 8 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

TABLE OF CONTENTS

Page

COMPLAINT WITH **CLASS ACTION ALLEGATIONS** FOR DECLARATORY AND INJUNCTIVE RELIEF .............................................................................. 1

JURISDICTION ........................................................................................... 2

VENUE ......................................................................................................... 2

PARTIES ...................................................................................................... 2

FACTUAL BACKGROUND .......................................................................... 2

.I.   Res Judicata Does Not Apply To Any Claim Or Issue In The Prior Case ............... 4

    A.  Failure to uphold the rule of law is a ground to invalidate the prior judgment ......................................................................................... 6

    B.  Failure to uphold the rule of law violates the Due Process Clause of the Fifth Amendment ......................................................................... 7

II.   Neither The District Court Nor The Eighth Circuit Determined Whether The Requested Records Were Agency Records .......................................... 8

III.  Plaintiff Proved The Requested Records Are Agency Records, Regardless Of Where Records Are Stored ................................................................. 9

IV.  USDA Was Not Treated As A Defendant; RMA's Search Was Inadequate ........... 14

V.   An Interpretive Rule Promulgated By An Agency With The Authority To Engage In Notice-And-Comment Rulemaking Is Not Entitled To *Chevron* Deference; Requiring Aggregation To The County Level Is An Administrative Determination And Thus Violates FOIA ...................................... 20

VI.  FOIA Request Not Asking For Creation Of New Records ...................................... 30

VII. The Claim That The Authority Of Section 1619 Of The Food, Conservation And Energy Act of 2008 Has Expired Was Not Adjudicated ................................. 33

VIII. Res Judicata Does Not Apply To The District Court's Analysis Of Attorney's Fees ..................................................................................... 36

IX.   USDA Has A Policy Or Practice Of Violating FOIA Due To Using An Expired Statute Pursuant To Exemption 3 To Deny Requests ............................. 55

      **Class Action Allegations** ..................................................................... 56

X.    USDA Has A Policy Or Practice Of Violating FOIA Due To Noncompliance With The Legal Standard For Agency Records Which Results In The Performance Of Inadequate Searches .................................................... 59

XI.   USDA Has A Policy Or Practice Of Violating FOIA By Not Taking Affirmative Steps Toward Maintaining Agency Records In Reproducible Forms Which Results In Agency Records Not Being Readily Reproducible .......... 59

XII.  USDA Has A Policy Or Practice Of Violating FOIA Due To Using An Administrative Determination Requiring Aggregation To The County Level To Comply With 7 U.S.C. §1502(c) Of The Federal Crop Insurance Act Pursuant To Exemption 3 ............................................................... 60

RELIEF REQUESTED ............................................................................ 61

## COMPLAINT WITH CLASS ACTION ALLEGATIONS FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq.*, to enjoin Unites States Department of Agriculture ("USDA") from the withholding of agency records relating to the aggregation by section of total production, acres, and yield for corn and for soybeans for four townships in Cherokee County, Iowa, for seven years. The records are being improperly withheld from plaintiff by USDA. Plaintiff asks the Court to order USDA to provide the records in the aggregate form by section as requested – including a record count of the number of records aggregated – and to provide other relief which includes four policy-or-practice claims, including one which has **class action allegations** due to USDA using Section 1619 of the Food, Conservation and Energy Act of 2008 – the authority of which expired on September 30, 2013 – pursuant to FOIA Exemption 3 to deny requests. The United States is being sued in constitutional challenges in which plaintiff is requesting this Court to: (1) declare the application of *Kay* v. *Ehrler*, 499 U.S. 432 (1991), to FOIA violates *pro se* litigants rights under the Due Process Clause of the Fifth Amendment, U.S. CONST. amend V, as attorney's fees are a prerequisite for a court to issue a written finding when agency personnel have acted arbitrarily or capriciously with respect to the withholding and enjoin the United States from applying *Kay* to FOIA; (2) declare the public benefit from the case, the commercial benefit to the plaintiff, or the nature of the plaintiff's interest in the records either each as an individual, or as a collective balancing test, prerequisite for attorney's fees violates litigants rights under the Due Process

Clause of the Fifth Amendment and enjoin the United States from requiring the said conditions either each as an individual, or as a collective balancing test, prerequisite for attorney's fees; (3) declare self-representation to be a fundamental right; and (4) declare it to be a violation of the Due Process Clause of the Fifth Amendment for an artificial person to possess the right of attorney-client relationship when said right cannot be held by a natural person.

## JURISDICTION

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over USDA pursuant to FOIA, 5 U.S.C. §552(a)(4)(B), and the United States pursuant to 28 U.S.C. §1331 (federal question).

## VENUE

3. Venue is appropriate under 5 U.S.C §552(a)(4)(B) and 28 U.S.C. §1391.

## PARTIES

4. Plaintiff William J. Bush is a natural person residing in the United States.

5. USDA is an agency within the meaning of 5 U.S.C. §552(f) and is in control/possession of the records sought by plaintiff that are the subject of this action. The United States is being sued in constitutional challenges as noted *ante*.

## FACTUAL BACKGROUND

6. On November 26, 2019, plaintiff *pro se* requested from USDA total production, acres, and yield aggregated by section for corn and for soybeans for Amherst, Rock, Sheridan, and Tilden Townships in Cherokee County, Iowa, for the years 2012-2018, including a record count of the number of records aggregated. The request

included, but not limited to, information from 7 C.F.R. §400.52(n) Actual Production History Coverage Program production reports ("APH records"). The request encompassed all of USDA, including, but not limited to: Risk Management Agency ("RMA"), Farm Services Agency ("FSA"), and National Agriculture Statistics Service. The request was made to: USDAFOIA@ocio.usda.gov. Neither USDA nor any of the agencies named responded to this request within twenty days as required by 5 U.S.C §552(a)(6)(A)(i). Administrative remedies have been exhausted pursuant to 5 U.S.C §552(a)(6)(C)(i).

7.  A previous FOIA request relating to some of the same claims and issues was made to RMA in 2016. USDA was also sued and served as a defendant. According to a USDA FOIA regulation at that time, 7 C.F.R. §1.25(a)(4), the person responsible for granting or denying a FOIA administrative appeal was USDA's Director of Communications. USDA's Director of Communications was not an RMA employee.

8.  The Northern District of Iowa case is *Bush* v. *RMA, et al.*, No. 5:16-cv-04128-CJW. The Eighth Circuit case is *Bush* v. *RMA, et al.*, No. 17-3295. The Eighth Circuit affirmed without opinion all of the district court orders by invoking 8th Cir. R. 47B which provides is appropriate only "if the court determines an opinion would have no precedential value" and the relevant conditions that "a judgment of the district court is based on finding of fact that are clearly not erroneous" or "no errors of law appear." (CA8 June 26, 2018). The Eighth Circuit also denied the petition for rehearing en banc. (CA8 August 29, 2018). The Supreme Court case is *Bush* v. *Dep't*

*of Agriculture, et al.*, No. 18-795. The petition for a writ of certiorari was denied on February 19, 2019. 586 U.S. \_\_\_, \_\_\_.

## I. Res Judicata Does Not Apply To Any Claim Or Issue In The Prior Case

9.  Plaintiff contends res judicata does not apply to any of the claims or issues because the final judgment on the merits is not valid in the prior case ("*Bush I*"). Specifically, plaintiff contends the rule of law – which plaintiff presented in the district court or appellate court of first instance, and which plaintiff neither waived nor forfeited in an appellate court – was not upheld. Alternatively, plaintiff contends it would be a violation of the Due Process Clause of the Fifth Amendment to apply res judicata to the failure to uphold the rule of law on any claim or issue in which the rule of law was presented in a district court or appellate court of first instance, and neither waived nor forfeited in an appellate court. These concerns are principally as follows: (1) whether the APH records are agency records even if stored on the information systems of Approved Insurance Providers ("AIP"), the question of which neither the district court nor the Eighth Circuit determined, and (2) whether an interpretive rule – requiring 15 records aggregated to the county level and promulgated by an agency with the authority to engage in notice-and-comment rulemaking – is entitled to *Chevron*[1] deference. See res judicata discussion, *infra*, ¶¶ 10-14. The argument that the FOIA request was asking for the creation of new records is frivolous pursuant to FED. R. CIV. P. 11(b) as reasoned, *infra*, ¶¶ 71-76.

---

[1] *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

10.   Res judicata "is to be invoked only after careful inquiry." *Brown* v. *Felsen*, 442 U.S. 127, 132 (1979). *Res judicata* requires a "final, *valid judgment* on the merits." *California Communities Against Toxics* v. *EPA*, 928 F.3d 1041, 1551 (CADC 2019) (citations omitted and emphasis added). "[T]here is no ground, such as fraud, to invalidate the prior judgment." *Whole Woman's Health* v. *Hellerstedt*, 136 S.Ct. 2292, 2331 (2016) (Alito, J., dissenting) (citations omitted). "But one general limitation the Court has repeatedly recognized is that the concept of [res judicata claim or issue preclusion] cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that [claim or] issue in the earlier case." *Allen* v. *McCurry*, 449 U.S. 90, 95 (1980) (quoting *Montana* v. *United States*, 440 U.S. 147, 153 (1979)). "[F]airness is implicated whenever there is risk that 'prior proceedings were seriously defective.' " *Yamaha Corp. of America* v. *U.S.*, 961 F.2d 245, 254 (CADC 1992) (quoting *Blonder-Tongue Labs., Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 333 (1971)). "We have long held, however, that extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is 'fundamental in character.' " *Richards* v. *Jefferson County*, 517 U.S. 793, 797 (1996) (quoting *Postal Telegraph Cable Co.* v. *Newport*, 247 U.S. 464, 475 (1918)). "[B]oth forms of preclusion are affirmative defenses that must be pled and proved by the defendant." *Hurd* v. *Dist. of Columbia*, 864 F.3d 671, 680 (CADC 2017) (citing *Taylor* v. *Sturgell*, 553 U.S. 880, 907 (2008)).

**A. Failure to uphold the rule of law is a ground to invalidate the prior judgment**

11.   The failure to uphold the rule of law – which was presented in the district court or appellate court of first instance, and neither waived nor forfeited in an appellate court – is a "ground, such as fraud, to invalidate the prior judgment." *Hellerstedt*, 136 S.Ct. at 2331 (Alito, J., dissenting).  No litigant has a "full and fair opportunity" to litigate any claim or issue without due process of law. *Allen*, 449 U.S. at 95 (quoting *Montana*, 440 U.S. at 153).  "[F]airness is implicated" as without due process of law the " 'prior proceedings were seriously defective.' " *Yamaha*, 961 F.2d at 254 (quoting *Blonder-Tongue*, 402 U.S. at 333).  Precluding any claim or issue based on the failure to uphold the rule of law – which was presented in the district court or appellate court of first instance, and neither waived nor forfeited in an appellate court – would be one of the "extreme applications of the doctrine of res judicata" which is "inconsistent with a federal right that is 'fundamental in character.' " *Richards*, 517 U.S. at 797 (quoting *Postal Telegraph Cable Co.*, 247 U.S. at 475).

12.   Plaintiff-appellant's petition for rehearing en banc – and also included in the petition for a writ of certiorari – contained the following statement: "Should the Eighth Circuit not grant this petition, the only plausible conclusion is that the modus operandi of the Eighth Circuit is to deny non-attorney[-at-law] *pro se* litigants access to the Rule of Law, meaning the Eighth Circuit 'has  so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of

this Court's supervisory power.' S. Ct. Rule 10(a)." (Pet. for Rehearing En Banc at 16-17 (CA8 August 6, 2018); Pet. For Writ of Cert. at 38-39 (November 27, 2018)); *contra Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371, 375 (1940) ("[N]o question had been raised as to the regularity of the court's action.").

### B. Failure to uphold the rule of law violates the Due Process Clause of the Fifth Amendment

13. Alternatively, it is a violation of the Due Process Clause of the Fifth Amendment to apply res judicata to a prior judgment based on any claim or issue in which the rule of law – which was presented in the district court or appellate court of first instance, and neither waived nor forfeited in an appellate court – was not upheld. *United States* v. *Windsor*, 133 S. Ct. 2675, 2695 (2013). ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." (citations omitted)).

14. Plaintiff-appellant's petitions for rehearing en banc and for a writ of certiorari both stated, "The Due Process Clause of the Fifth Amendment is violated due to the failure to uphold Supreme Court and Eighth Circuit decisions, and sanctioning said conduct in the District Court, which renders the law 'so standardless that it invites arbitrary enforcement.' *Cf. Johnson* v. *United States*, 135 S. Ct., 2551, 2556 (2015)." (Pet. for Rehearing En Banc at 16 (CA8 August 6, 2018); Pet. for Writ of Cert. at 38 (November 27, 2018)).

II.    **Neither The District Court Nor The Eighth Circuit Determined Whether The Requested Records Were Agency Records**

15. Plaintiff's FOIA request in *Bush I* was made on the basis of required elements of the APH records. (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 5,[2] ECF No. 26 (N.D.Iowa June 21, 2017); RMA's Appellee Br. at 19 (CA8 January 31, 2018)). The question of whether the APH records were agency records was not determined by either the district court or the Eighth Circuit in *Bush I*. A determination that the requested records were agency records would mean that plaintiff had "substantially prevailed," 5 U.S.C. §552(a)(4)(E)(ii). (Pet. for Writ of Cert. at 13 (November 27, 2018).

16. The Supreme Court has held that the question of whether the requested records are "agency records" is the first consideration. *Dep't of Justice* v. *Tax Analysts*, 492 U.S. 136, 143 (1989); (Pet. for Writ of Cert. at 7 (November 27, 2018)). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.' " *Id.*, at 142, n. 3 (citations omitted); (Appellant's Princ. Br. at 18 (CA8 December 21, 2017); Pet. for Writ. of Cert. at 7-8 (November 27, 2018)). "Whether or not the requested records were agency records is a question of law which we review *de novo*." *Missouri, ex rel. Garstang* v. *U.S. Dep't of Interior*, 297 F.3d 745, 749 (CA8 2002); (Appellant's Princ. Br. at 18 (CA8 December 21, 2017)).

---

[2]Page number references are to the actual page number of the document, not the ECF-generated page number, unless no page number is listed on the document and the page numbers are one and the same.

III.   **Plaintiff Proved The Requested Records Are Agency Records, Regardless Of Where Records Are Stored**

17. The standard for the determination of agency records is "create or obtain," and "control." *Tax Analysts*, 492 U.S. at 144-145 (citation omitted); (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 4, ECF No. 26 (June 21, 2017); Appellant's Princ. Br. at 20 (CA8 December 21, 2017); Pet. for Writ of Cert. at 8 (November 27, 2018)). Furthermore, in denying the FOIA request in *Garstang*, 297 F.3d 745, the Eighth Circuit adopted the "nexus" standard from the District of Columbia ("D.C.") Circuit's decision in *Wolfe* v. *Dep't of Health and Human Servs.*, 711 F.2d 1077 (CADC 1983) (holding that a nexus must exist between agency and requested documents for documents to pass from private to agency control). *Garstang*, 297 F.3d at 751 (holding that "Missouri has not provided any evidence to establish the requisite nexus between the MRNRC's records and the Service's performance of its official agency duties").

18. Plaintiff-appellant's principal brief stated:

 The D.C. Circuit has held:

   [A] record can be under an agency's control even if not physically held by the agency. In *Burka* v. *U.S. Department of Health & Human Services*, for example, we held that, although the requested records were "neither created by agency employees, nor... located on agency property," the agency had a close enough relationship with the records to give the agency "constructive control" over them. 87 F.3d 508, 515 (D.C. Cir. 1996); *see also Competitive Enter. Inst. v. Office of Sci. &*

*Tech. Policy*, 827 F.3d 145, 150 (D.C. Cir. 2016) (holding that emails, although stored on a private organization's server, could nonetheless be "agency records" if the agency retained "possession and control").

*Aguiar* v. *DEA*, 865 F.3d 730, 736 (D.C. Cir. 2017).

(Appellant's Princ. Br. at 20 (CA8 December 21, 2017)).

19. Plaintiff proved in the resistance to the motion for summary judgment and at oral arguments[3] that RMA and USDA create or obtain, and control the APH records. (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 2-7,ECF No. 26 (N.D.Iowa June 21, 2017); Transcript at 13-16, ECF No. 37 (N.D.Iowa October 30, 2017)).

20. The district court ruled, "[T]he record shows RMA did not maintain records matching the description of plaintiff's request." (Mem. Op. and Order at 11, ECF No. 30 (N.D.Iowa August 17, 2017)). The district court's ruling violates binding Supreme Court precedent of "create or obtain," and "control" for the determination of agency records. *Tax Analysts*, 492 U.S. at 144-145 (citation omitted); (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 4, ECF No. 26 (N.D.Iowa June 21, 2017); Transcript at 13-16, ECF No. 37 (N.D. Iowa (October 30, 2017); Appellant's Princ. Br. at 19-20 (CA8 December 21. 2017); Pet. for Writ. of Cert. at 8 (November 27, 2018)).

21. The district court's ruling is "an arbitrary discretion." *Brayton* v. *Office of the U.S. Trade Representative*, 641 F.3d 521, 526 (CADC 2011) (quoting *Missouri* v. *Jenkins*, 515 U.S. 70, 129 (1995) (Thomas, J., concurring) (quoting THE

---

[3]Oral arguments refer to the hearing on the motion for summary judgment, *Bush* v. *RMA, et al.*, 5:16-cv-04128-CJW, ECF No. 37 (N.D.Iowa October 30, 2017).

FEDERALIST NO. 78, at 529 (J. Cooke ed. 1961) (Alexander Hamilton) ("To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them."))). "[A]n arbitrary discretion" in the courts is to be avoided. *Ibid.* "[A]n arbitrary discretion" is another way of stating the law is "so standardless that it invites arbitrary enforcement," *Johnson*, 135 S.Ct. at 2556. "[A]n arbitrary discretion" is a violation of the Due Process Clause of the Fifth Amendment. *United States* v. *Windsor*, 133 S. Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." (citations omitted)). Res judicata does not apply to "an arbitrary discretion." *Ibid.* RMA argued for the district court to enforce "an arbitrary discretion." (RMA's Mot. for Sum. Judg. Br. at 7, ECF No. 20-1 (N.D.Iowa May 8, 2017) (citing "Affidavit of David P. Zanoni" ("Affidavit") at App. 3, ECF No. 20-3) (N.D.Iowa May 8, 2017) ("Defendant does not collect or maintain this data, and it is not part of Defendant's record systems."); Transcript at 6, ECF No. 37 (N.D.Iowa October 30, 2017) ("The defendant does not maintain any native record that contains all the production data sought defined by land location.").

22. RMA stated in the Affidavit, "Additional records obtained by AIPs as part of its normal business operations…are not created, obtained or controlled by RMA." (RMA's Mot. for Sum. Judg. Affidavit ¶ 7, ECF No. 20-3 at 3 (N.D.Iowa May 8,

2017). The Affidavit's reference to "[a]dditional records" was referring to the APH records. (*Ibid.*).

23. Plaintiff's statement of additional material facts no. 8 stated, "Production reports created pursuant to 7 CFR § 400.52(n) are the same production reports *required to be created* by the Crop Insurance Handbook." (Plaint. Stmt. of Addit. Mat. Facts at 2, ECF No. 26-2 (N.D.Iowa June, 21, 2017) (citations omitted and emphasis added)). RMA responded, "Admitted." (RMA's Resp. to Stmt. of Addit. Mat. Facts at 2, ECF No. 27 (N.D.Iowa June 28, 2017)). RMA's admission contradicts the Affidavit. (Transcript at 13, ECF No. 37 (N.D.Iowa October 30, 2017).

24. In 1996, Congress created RMA, which administers the federal crop insurance program on behalf of the Federal Crop Insurance Corporation ("FCIC"). *United States* v. *Hawley*, 619 F.3d 886, 889 (CA8 2010). The Eighth Circuit has held, "The Act, and related regulations issued by the Secretary of Agriculture in 7 C.F.R. Part IV, give the FCIC significant *control* over all aspects of the federal crop insurance program. *American Growers Insurance Co.* v. *FCIC*, 532 F.2d 797, 798 (CA8 2010) (emphasis added). Plaintiff included this citation in the brief in resistance to motion for summary judgment and stated, "[The Affidavit] contradicts the controlling authority of the Eighth Circuit Court of Appeals when [the Affidavit] states, '[a]dditional records obtained by AIPs...are not...controlled by RMA.' " (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 6, ECF No. 26 (N.D.Iowa June 21, 2017); Transcript at 15, ECF No. 37 (N.D.Iowa October 30, 2017)).

25. RMA's appellee brief stated:

Plaintiff contends that RMA's search was inadequate and therefore in bad faith because it did not include Actual Production History (APH) Coverage Program Records. (Pl. Br. 24). APH records are used by insurance producers to provide data to Approved Insurance Providers (AIP), and the data in these reports is provided via the "Acreage Report."

(RMA's Appellee Br. at 19 (CA8 January 31, 2018)).

26. Plaintiff-appellant replied:

RMA's admission contradicts the [Affidavit]. [The Affidavit] stated, "RMA does not utilize or rely upon such records, and RMA has not incorporated these AIP records into its own record system. By stating "the data in these reports is provided by the 'Acreage Report,' " RMA is now admitting RMA does "utilize or rely upon such records." Furthermore, RMA's admission that "the data in these reports is provided via the 'Acreage Report,' " establishes "the requisite nexus between the [APH] records and [RMA's] performance of its official agency duties." *Missouri, ex rel. Garstang* v. *U.S. Dep't of Interior*, 297 F.3d 745,751 (8th Cir. 2002).

(Appellant's Reply Br. at 4-5 (CA8 February 15, 2018)).

27. In the petition for a writ of certiorari, Plaintiff-appellant stated:

In *Garstang*, the Eighth Circuit adopted the "nexus" standard for "agency records" from *Wolfe* v. *Dep't of Health & Human Servs.*, 711 F.2d at 1080, which the D.C. Circuit adopted from *Forsham*, 445 U.S., at 178, yet the

13

Eighth Circuit failed to uphold *Garstang*, and by extension *Forsham*, in this case.

(Pet. for Writ of Cert. at 12 (November 27, 2018)).

28. Plaintiff-appellant's petition for rehearing en banc stated the panel's decision conflicted with *American Growers* and *Garstang*. (Appellant's Pet. for Rehearing En Banc at 8 (CA8 August 19, 2018)). Plaintiff-appellant stated controlling Eighth Circuit law: "[O]ne panel may not overrule an earlier decision by another. Only the court en banc has the power to take such action. *Jackson* v. *Ault*, 452 F.3d 734, 736 (8th Cir. 2006)." (*Ibid.*). Plaintiff-appellant stated, "By failing to apply Eighth Circuit decisions in this case and invoking 8th Cir. R.47B, the panel has effectively overruled *American Growers* and *Garstang*." (*Ibid.*).

IV.     **USDA Was Not Treated As A Defendant; RMA's Search Was Inadequate**

29. USDA did not answer the amended complaint ("complaint") in *Bush I*. In denying Plaintiff's motion for default judgment against USDA for failure to answer the complaint, the district court stated, "Plaintiff...has not provided evidence demonstrating that RMA and USDA are legally-distinct," and "I find that RMA's answer should be deemed to apply equally to USDA." (Order at 1-2, ECF No. 14 (N.D.Iowa February 27, 2017). USDA did not sign on to any subsequent pleading, including the motion for summary judgment. USDA did not respond to plaintiff's statement of additional material facts no. 14-16, 18-19, and 24 which related to USDA beyond RMA. (Plaint. Stmt. of Adit. Mat. Facts, ECF No. 26-2 at 3-4

(N.D.Iowa June 21, 2017); RMA Resp. to Stmt. of Adit. Mat. Facts, ECF No. 27 at 3-4 (N.D.Iowa June 28, 2017)).

30. Plaintiff stated at oral arguments:

And in the answer to the statement of additional facts, only RMA is answering. U.S.D.A. is not providing an answer. And that's abundantly clear in items 14 through 16, 18 and 19 where they say denied for lack of information as this is not an RMA program which I -- those statements were referring to U.S.D.A. And, therefore, those statements are admitted for U.S.D.A. because U.S.D.A. is a defendant and they were not denied for U.S.D.A.

(Transcript at 21, ECF No. 37 (N.D.Iowa October 30, 2017)).

31. Plaintiff stated in the resistance to the motion for summary judgment:

Defendants have "not provided evidence demonstrating that RMA and USDA are legally-distinct." If RMA's answer "should be deemed to apply equally to USDA," then by the same standard Plaintiff's FOIA request "should be deemed to apply equally to USDA." If Defendants were now to provide "evidence demonstrating that RMA and USDA are legally-distinct," the question would be why Defendants did not inform the Court of this fact when the Order denying the motion for default judgment was issued. USDA received a benefit from the Court by not being required to answer the [complaint] after being duly served with a summons and a copy of said

15

complaint.  USDA must now bear any detriment which flows from having

accepted said benefit.

(Plaint. Br. in Resist. to Mot. for Sum. Judg. at 8, ECF No. 26 (N.D.Iowa June 21,

2017) (citations omitted)).

32. [The Affidavit] is only referring to RMA and, apparently, disregarding

that USDA is also a defendant.  [The Affidavit] also disregards the Court

has held USDA is RMA (Plaint. App.[, ECF No. 26-3] at 10); therefore, RMA

is USDA.

(*Id.*, at 9).

33. RMA stated at oral arguments:

First, addressing the reasonableness of the search, it seems to me that the

plaintiff is making an argument that the RMA and the FSA are the same

thing, and they're not. They're separate agencies within one. Just because

the RMA is under the U.S.D.A. and just because the FSA is under the

U.S.D.A., RMA does not equal FSA. It's like carrots are vegetables. Peas are

vegetables, but carrots aren't peas.

(Transcript at 27, ECF No. 37 (N.D.Iowa October 30, 2017)).

34. Plaintiff-appellant's petition for rehearing en banc stated:

The panel's affirmation of USDA's acceptance of the district court's finding

"that RMA's answer should be deemed to apply equally to USDA," February

Order 2, and then allowing the "singular defendant," June Order 3, to limit

the search to RMA, August Order 6, conflicts with *New Hampshire* v.

*Maine*, 532 U. S. 742, 749 (2001) ("This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (internal quotation marks and citations omitted).

(Pet. for Rehearing En Banc at 10-11 (CA8 August 6, 2018)).

35. In response to Plaintiff's statement of additional material facts nos. 14-16, 18-19, and 24, RMA stated, "Denied for lack of information as this is not a RMA program." (RMA's Resp. to Stmt. of Addit. Mat. Facts at 3-4, ECF No. 27 (N.D.Iowa June 28, 2017)). RMA also stated in response to Plaintiff's statement of additional material facts nos. 18 and 19, "RMA cannot speculate what 'RMA data' means in FSA's context." (*Id.*, at 3).

36. Plaintiff's statement of additional material facts nos. 14-16, 18-19, and 24 addressed FSA's obtainment and maintenance of information from the APH records. (Plaint. Stmt. of Addit. Mat. Facts at 3-4, ECF No. 26-2 (N.D.Iowa June, 21, 2017)). Plaintiff identified and provided evidence that FSA's Farm Records Management System as the place where this APH information is stored. (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 7-8, ECF No. 26 (citing Plaint. App. at 13-14, ECF No. 26-3) (N.D.Iowa June 21, 2017)). RMA admitted in its answer to Plaintiff's statement of additional material facts no. 25 that FSA's Farm Records Management System was not searched. (RMA's Resp. to Stmt. of Addit. Mat. Facts at 4, ECF No. 27 (N.D.Iowa June 28, 2017)).

37. Plaintiff's brief in resistance to the motion for summary judgment stated, "The Court should accept Defendants' assertions that the APH records requested to aggregated by section are 'RMA yield information,' 'RMA information,' and 'RMA data' and conclude that all of the APH records are 'agency records' of Defendants." (Plaint. Br. in Resist. to Mot. for Sum. Judg. at 7, ECF No. 26 (N.D.Iowa June 21, 2017) (citations omitted)).

38. Plaintiff-appellant's principal brief stated:

RMA's search was inadequate as all APH records were excluded from the search; therefore, RMA is not entitled to summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a). *Aguiar*, 865 F.3d at 738. ("[I]f a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, then we must deny summary judgment.") (internal quotation marks and citation omitted).

(Appellant's Princ. Br. at 11 (CA8 December 21, 2017)).

39. The district court stated, "If the agency shows it conducted a reasonable search, as it has here, the burden shifts to plaintiff to show the agency did not act in good faith. *Miller*, 779 F.2d at 1383. Plaintiff offered no evidence to contradict the Affidavit." (Mem. Op. and Order at 11-12, ECF No. 30 (N.D.Iowa August 17, 2017)).

40. Plaintiff-appellant's principal brief stated, "The district court's statement that '[p]laintiff offered no evidence to contradict the Affidavit' is wholly contradicted by the record." (Appellant's Princ. Br. at 13, 18-26 (CA8 December 21, 2017)). RMA's appellee brief contradicted the district court's statement by acknowledging,

"Plaintiff contends that RMA's search was inadequate and therefore in bad faith because it did not include Actual Production History (APH) Coverage Program Records." (RMA's Appellee Br. at 19 (CA8 January 31, 2018)). Plaintiff made this very argument regarding the inadequacy of the search in the resistance to the motion for summary judgment (at 3-9), at oral arguments (at 12-16), in appellant's principal brief (at 11-14), and in the petition for a writ of certiorari (at 16-18). Plaintiff also argued in the resistance to the motion for summary judgment that the search was inadequate because it did not include FSA's Farm Records Management System, as noted *ante*, ¶ 36.

41. Plaintiff stated at oral arguments, "[T]hese records are created pursuant to the actual production history coverage program, and it seems absurd that the defendants can administer the actual production history coverage program without the actual production history records which is what these records are, that they can't even aggregate the records to the county level without relying on these records." (Transcript at 14, ECF No. 37 (N.D.Iowa October 30, 2017); Appellant's Princ. Br. at 18-19 (CA8 December 21, 2017)).

42. Plaintiff included examples of the APH records for soybeans and for corn from RMA's Crop Insurance Handbook as Exhibits 4 and 5 in plaintiff's appendix to the brief in resistance to the motion for summary judgment. (Plaint. Br. in Resist. to Mot. for Sum. Judg. App. at 6-7, ECF No. 26-3 (N.D.Iowa June 21, 2017)). These examples of APH records show, as required elements, the information plaintiff requested to be aggregated by section. (*Ibid.*). RMA admitted legal description,

which is section/township/range, is a required element of the APH records. (Answer ¶ 9, ECF No. 11 (N.D.Iowa February 7, 2017)). RMA admitted legal description allows the aggregation of the APH records by section. (RMA's Resp. to Stmt. of Addit. Mat. Facts at 1, no. 3, ECF No. 27 (N.D.Iowa June 28, 2017)).

43. The search was inadequate due to excluding the APH records and FSA's Farm Records Management System. See policy-or-practice claim due to USDA's noncompliance with the legal standard for agency records which results in the performance of inadequate searches, *infra*, ¶¶ 129-130.

**V.**

**An Interpretive Rule Promulgated By An Agency With The Authority To Engage In Notice-And-Comment Rulemaking Is Not Entitled To *Chevron* Deference; Requiring Aggregation To The County Level Is An Administrative Determination And Thus Violates FOIA**

44. In an email dated December 17, 2015, and included in the appendix to the complaint, plaintiff asked RMA, "Please advise where in the Federal Crop Insurance Act the law stipulates aggregation must be to the County Level as you state." (Compl. App. at 9, ECF No. 3-1 (N.D.Iowa December 5, 2016)). RMA's same day response, which was also included in the appendix to the complaint, stated, "USDA's interpretation of the Act is that producer provided information must be aggregated to at least the county level." (*Ibid.*).

45. The complaint stated:

[RMA] cites no authority where the ordinary meaning of "aggregate" is ever defined as meaning to the county level. If Congress had intended "aggregate" to mean to the county level in 7 U.S.C. § 1502(c), Congress

20

would have defined "aggregate" as such in 7 U.S.C. § 1502(c) or elsewhere in

the Federal Crop Insurance Act, 7 U.S.C. §§ 1501-1524.

(Compl., ¶ 12, ECF No. 3 (N.D.Iowa December 5, 2016)).

46. The Affidavit stated that RMA "determined 15 records within a county to be

a reasonable number of records for crop insurance that would balance transparently

providing data to the public while ensuring statutory protections of producer

provided information." (RMA's Mot. for Sum. Judg. Affidavit ¶ 23, ECF No. 20-3

(N.D.Iowa May 8, 2017)).

47. Plaintiff's brief in resistance to the motion for summary judgment stated:

Aggregation transforms the Federal Crop Insurance Act, 7 U.S.C. §§ 1501-

1531, from a withholding statute into a disclosing one.

(Plaint. Br. in Resist. to Mot. for Sum. Judg. at 9, ECF No. 26 (N.D.Iowa June 21,

2017)).

48. Defendants state, "Releasing the results...can be used to reverse

engineer the identity of the producer" ([ECF No. 20-1 at 11]) and then cite

[the Affidavit's] example of "public records showing Producer A has 100

acres in Section 1...with 100 acres harvested with a yield of 100 bushels per

acre, then it can be inferred that Producer A yielded 100 bushels per acre."

([ECF No. 20-3, ¶ 29]). [The Affidavit's] example of only one producer in a

section means there are no records to aggregate; therefore, there are no

responsive records for that section. However, [the Affidavit] has identified

the appropriate suppression standard for 7 U.S.C. § 1502(c) of the Federal

Crop Insurance Act.   Information is suppressed, i.e. not disclosed, when there is only one producer per section, per crop, per year; information is disclosed when there are two or more producers per section, per crop, per year.

(*Id.*, at 10).

49. "For our purposes, it suffices to say that the critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.' " *Perez* v. *Mortgage Bankers Ass'n*, 575 U. S. ___ (2015), No. 13–1041, slip op. at 3, quoting *Shalala* v. *Guernsey Memorial Hospital*, 514 U. S. 87, 99 (1995) (internal quotation marks omitted).   "The absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules.   But that convenience comes at a price:   Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Ibid.*   In an email dated December 17, 2015[, RMA] stated, "USDA's interpretation of the Act is that producer provided information must be aggregated to at least the county level." ([ECF No. 26-3] at 12).   [RMA] acknowledges this is an interpretive rule and USDA, not RMA, is providing the interpretation.

(*Id.*, at 10-11).

50. "Congress intended exemption from the FOIA to be a legislative determination and not an administrative one." *Wisc. Project on Nuclear Arms Control* v. *U.S. Dep't of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003), quoting *Irons & Sears* v. *Dann*, 606 F.2d 1215, 1220 (D.C. Cir. 1979) (footnote omitted). "A statute qualifies as a withholding statute under Exemption 3, then, where 'Congress ha[s] itself made the basic decision, and ha[s] left to the administrator only the task of implementation.'" *Ibid.*, quoting *Am. Jewish Cong.* v. *Kreps*, 574 F.2d 624, 630 (D.C. Cir. 1978). "Exemption 3 takes literally the requirement that disclosure prevail absent 'clearly delineated statutory language.'" *Ibid.*, quoting *Dep't of the Air Force* v. *Rose*, 425 U.S. 352, 361 (1976). "Congress expressly prohibited the disclosure of the GIS data in the 2008 Farm Bill and Central Platte's request fell within that prohibition." *Central Platte Natural Resource District* v. *USDA*, 643 F3d. 1142, 1148 (8th Cir. 2011). Conversely, in the case at bar the FOIA request falls outside of Congress' prohibition in 7 U.S.C. § 1502(c); Congress only requires the release of records be in aggregate form and the FOIA request in the case at bar asks for records in aggregate form.

(*Id.*, at 11).

51. "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995); *see also FDIC* v. *Meyer*, 510 U. S. 471, 476 (1994). If Congress had

intended "aggregate" and "particular" to have meanings other than their ordinary meanings, Congress would have defined "aggregate" and "particular" as such in the Federal Crop Insurance Act, 7 U.S.C. §§ 1501- 1531.

(*Id.*, at 11-12).

52. The Court should conclude Exemption 3 of FOIA does not apply as the FOIA request is asking for information in aggregate form.

(*Id.*, at 12).

53. Plaintiff stated at oral arguments, "It seems they were under the impression they had a *Chevron* defense…." (Transcript at 20, ECF No. 37 (N.D.Iowa October 30, 2017) (italics added)).

54. The district court stated, "So that was the source of my question. And Mr. Bush's position is aggregate is not otherwise defined here and you have to go to the common meaning of the word of aggregate. And so what's your response to that other than the context? Or is that your response?" (*Id.*, at 28).

55. RMA replied, "That is my response, that if it is an interpretive rule that it would be given deference under *Chevron*…." (*Ibid.* (italics added)). RMA also stated, "So whether that's four, whether that's five, that's what it needs to be aggregated to…." (*Id.*, at 29).

56. The district court stated, "The Court finds that defendant's assessment of the number of records necessary for aggregation in a manner so as to prevent identification to be reasonable." (Mem. Op. and Order at 20, ECF No. 30 (N.D.Iowa

August 17, 2017).) The district court cited no authority in finding "that defendant's assessment of the number of records necessary for aggregation in a manner so as to prevent identification to be reasonable." (*Ibid.*). The district court's ruling is "an arbitrary discretion" as reasoned, *ante*, ¶ 21 and, *infra*, ¶¶ 57-62.

57. Reasonable is the standard for *Chevron* deference. *United States* v. *Mead Corp.*, 533 U.S. 218, 229 (2001) (citing *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837, 842-845 (1984). An interpretive rule promulgated by an agency with the authority to engage in notice-and-comment rulemaking is not entitled to *Chevron* deference. *Id.*, at 226-227; (Pet. for Rehear. En Banc at 9 (CA8 August 6, 2018); Pet. for Writ of Cert. at 19 (November 27, 2018)). *Chevron* deference is the only defense RMA presented regarding "the number of records necessary for aggregation in a manner so as to prevent identification" of the person who supplied particular information. (Transcript at 28, ECF No. 37 (N.D.Iowa October 30, 2017).

58. Plaintiff-appellant's principal brief stated:

[RMA] stated, "[T]hat if it is an interpretive rule that it would be given deference under *Chevron*...," (Transcript 28 [(italics added)]). [RMA]'s assertion is contrary to binding Supreme Court precedent as "[i]nterpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process," *Perez*, *supra*, at 1204 (internal quotation marks and citation omitted).

(Appellant's Princ. Br. at 27 (CA8 December 21, 2017)).

59. The district court erred in giving deference to the interpretive rule that 15 records are necessary to prevent "the identification of the person who supplied particular information," 7 U.S.C. § 1502(c)(2)(A). The district court was required by law, *Perez*, *supra*, at 1204, to conduct its own independent determination as to the number of records necessary.

(*Id.*, at 27-28).

60. [RMA]'s search discovered "7 records in a given section," ([Affidavit ¶ 23, ECF No. 20-3 (N.D.Iowa May 8, 2017)]), which is more than "whether that's four, whether that's five," (Transcript 29), records [RMA] conceded is necessary to prevent "the identification of the person who supplied particular information," 7 U.S.C. § 1502(c)(2)(A).

(*Id.*, at 28).

61. In terms of the number of records required to prevent "the identification of the person who supplied particular information," 7 U.S.C. § 1502(c)(2)(A), [RMA] stated, "So whether that's four, whether that's five, that's what it needs to be aggregated to...," (Transcript 29). "The district court erred by giving deference to an interpretive rule that USDA, RMA and [the Department of Justice] have less than confidence in.

(*Ibid.*).

62. The district court erred by applying the wrong standard for summary judgment. The proper standard is "beyond material doubt," *Aguiar*, 865 F.3d

at 738 (citation omitted), not what is "reasonable," ([Mem. Op. and Order at

20, ECF No. 30 (N.D.Iowa August 17, 2017)]).

(*Id.*, at 29).

63. The district court also stated: "The Court also rejects plaintiff's

argument that the identity of the producer might not be readily apparent

because the producer may be operating under the name of a corporation or

other entity, and therefore disclosure of the information may not reveal the

identity of the producer. This is speculation." ([Mem. Op. and Order at 13,

ECF No. 30 (N.D.Iowa August 17, 2017)]). "The Agency cannot count on the

possibility of producers operating under fictitious legal entities to prevent

identification." (*Ibid.*).

(*Ibid.*).

64. It is no more speculation to consider the possibility that a producer could

be a corporation or other artificial entity then it is to assume the producer is

the natural person performing the farm work. Plaintiff stated, "There's all

kinds of scenarios where the identity of the producer is not readily apparent

or easily known." (Transcript 19). The producer could be the landowner who

hired someone to custom farm the land.  The producer could be a share

agreement between landowner and lessee whereby the identity of the person

is the actual percentage each shares in the agreement. The producer could

actually be any combination of natural and/or artificial person or persons.

Thus, the identity of a person is the actual percentage components of each

natural and/or artificial person or persons comprising the producer and a third party would have to know each of those components to know "the identification of the person who supplied particular information," 7 U.S.C. § 1502(c)(2)(A). Plaintiff stated, "So someone would have to have intimate knowledge of another person's operation to know just who the identity of the producer who supplied particular information." (Transcript 11). Thus, someone would have to know for certain, and not just speculation, the identity of a person who supplied particular information for 5 U.S.C. § 552(b)(3) of FOIA to apply. It is more than speculation for the district court to *prima facie* conclude corporations and other artificial entities are "fictitious legal entities," ([Mem. Op. and Order at 13, ECF No. 30 (N.D.Iowa August 17, 2017).)]), and therefore, not legitimate. It is error.

(*Id.*, at 29-30).

65. If Congress intended for "aggregate" and "particular" to have meaning other than the ordinary meaning of these words, Congress would have defined these words as such. *See Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *see also Milner* v. *Dep't of Navy*, 562 U. S. 562, 569 (2011) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

(*Id.*, at 31-32).

66. Should Plaintiff prevail on count one of relief requested, ([Compl. ¶ 42, ECF No. 3 (N.D.Iowa December 5, 2016).]), or any aggregation standard lower than the county level, Plaintiff will have "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(ii).

(*Id.*, at 43).

67. RMA conceded an aggregation of four or five records would not allow the identity of the person who provided particular information. (Transcript at 29, ECF No. 37 (N.D.Iowa October 30, 2017)). RMA's admission contradicts the Affidavit and the district court's ruling, *ante*, ¶ 60.

68. Furthermore, "before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Kisor* v. *Wilkie*, 139 S.Ct. 2400, 2405 (2019) (quoting *Chevron*, 467 U.S. at 843, n. 9). One of the " 'traditional tools' of construction," *ibid.*, is that words undefined in a statute are given ordinary meaning. *Asgrow*, 513 U.S. at 187. Congress did not mandate records be aggregated to the county level in 7 U.S.C. §1502(c). Therefore, even a legislative rule requiring aggregation to the county level would be unreasonable pursuant to the Administrative Procedure Act, 5 U. S. C. § 706(2)(A), which provides the reviewing court shall set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

69. While plaintiff cited the requirement, *ante*, ¶ 50, that "disclosure prevail absent 'clearly delineated statutory language,' " *Wisc. Project*, 317 F.3d at 280 (quoting *Rose*, 425 U.S. at 361), the Supreme Court stated the requirement perhaps

with better clarity in *CIA* v. *Sims*, 471 U.S. 159, 168 (1985) ("Agency records...are protected...only to the extent...disclosure would reveal...protected information.").

70. Requiring aggregation to the county level is an administrative determination and thus violates FOIA. *Wisc. Project*, 317 F.3d at 280 ("Congress intended exemption from the FOIA to be a legislative determination and not an administrative one." (citation omitted)). Plaintiff contends the aggregation standard is two or more aggregated records per section while RMA conceded at oral arguments the standard was at least as low as four or five aggregated records. (Transcript at 28, 29, ECF No. 37 (N.D.Iowa October 30, 2017). Plaintiff contends this is a material fact in dispute for trial and for which discovery is necessary. See policy-and-practice claim due to USDA's use of an administrative determination requiring aggregation to the county level, *infra*, ¶¶ 132-134.

## VI.    FOIA Request Not Asking For Creation Of New Records

71. The district court ruled, "Defendant did not have the obligation under FOIA to create records for plaintiff." (Mem. Op. and Order at 11, ECF No. 30 (N.D.Iowa August 28, 2017)). RMA's only argument – based on the cases cited in its appellee brief regarding the creation of new records – was that the APH records are not agency records, and compelling RMA to access the APH records would be forcing RMA to create new records. (RMA's Appellee Br. at 21-22 (CA8 January 31, 2018)). Plaintiff has proved RMA's argument that the APH records are not agency records to be frivolous, *ante*, ¶¶ 17-27. RMA's argument in district court that the aggregation of the records would compel RMA to create new records is frivolous as it

violates the "form or format" requirement of FOIA, 5 U.S.C. §552(a)(3)(B), and is not based on any Eighth Circuit or Supreme Court law.

72. Plaintiff's complaint stated the requirements of 5 U.S.C. § 552(a)(3)(B):

"In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.  Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section."

(Comp., ¶ 8, ECF No. 3 (N.D.Iowa December 5, 2016)).

73. The complaint also stated:

The aggregation of the records is a function of the search requirements mandated by 5 U.S.C § 552(a)(3)(D).

(*Id.*, ¶ 17).

74. "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co.* v. *Winterboer*, 513 U. S. 179, 187 (1995); *see also FDIC* v. *Meyer*, 510 U. S. 471, 476 (1994).  Since "form" is used in both FOIA and 7 U.S.C. §§ 1501-1524, form must have the same "ordinary meaning," *ibid.*, in both statutes as form is not defined otherwise in either statute. [RMA] cites no authority where the ordinary meaning of "aggregate" is ever defined as meaning to the county level. If Congress had intended "aggregate" to mean to the county level in 7 U.S.C. § 1502(c),

Congress would have defined "aggregate" as such in 7 U.S.C. § 1502(c) or elsewhere in the Federal Crop Insurance Act, 7 U.S.C. §§ 1501-1524.

(*Id.*, ¶ 12).

75. Plaintiff's resistance to the motion for summary judgment stated:

Plaintiff contends that a request for any alteration to the records would be a request for new reports or records. However, a request for the records in an aggregate form other than the county level aggregate form is not asking for any alteration to the records and hence, not requesting the creation of new reports or records.

(Plaint. Br. in Resist. to Mot. for Sum. Judg. at 3, ECF No. 26 (N.D.Iowa June 21, 2017)).

76. Furthermore, "[t]he *Carlson* court ordered the agency to produce the requested records in aggregate form since the records existed electronically and could be compiled in the aggregate. *See* 2005 WL 756573, at *7." *Scudder* v. *CIA*, 25 F. Supp. 3d 19, 37 (D.D.C. 2014) (citing *Carlson* v. *U.S. Postal Serv.*, No. 02-5471, 2005 WL 756573 (N.D.Cal. Mar. 31, 2005). Therefore, USDA is required to provide the records in the form requested which is by section. *Ibid.* Any argument to the contrary is frivolous. See policy-or-practice claim due to USDA not taking affirmative steps toward maintaining records in reproducible forms such that they are readily reproducible when sought out by FOIA requesters, *infra*, ¶ 131.

### VII.    The Claim That The Authority Of Section 1619 Of The Food, Conservation And Energy Act of 2008 Has Expired Was Not Adjudicated

77. The claim that the authority of Section 1619 of the Food, Conservation and Energy Act of 2008 ("Section 1619"), codified at 7 U.S.C. §8791, expired on September 30, 2013, was not adjudicated by either the district court or the Eighth Circuit in *Bush I*. RMA raised Section 1619 as a defense against disclosure in denying the administrative appeal. (Compl. App. at 5, ECF No. 3-1 (N.D.Iowa December 5, 2016).

78. The complaint in *Bush I* stated:

[T]he authority of Section 1619 ceased with the expiration of the extension of the Food, Conservation and Energy Act of 2008 in Section 701 of the American Taxpayer Relief Act of 2012 (Pub. L. 112-240, § 701, 126 Stat. 2313 (2013)) which states:

SEC. 701. 1-YEAR EXTENSION OF AGRICULTURAL PROGRAMS.

(a) EXTENSION.—Except as otherwise provided in this section and amendments made by this section and notwithstanding any other provision of law, the authorities provided by each provision of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 1651) and each amendment made by that Act (and for mandatory programs at such funding levels), as in effect on September 30, 2012, shall continue, and the Secretary of Agriculture shall carry out the authorities, until the later of —

(1) September 30, 2013; or

33

(2) the date specified in the provision of that Act or amendment made by

that Act.

(Comp., ¶ 13, ECF No. 3 (N.D.Iowa December 5, 2016)).

79. Since no date later than September 30, 2013 is specified in Section 1619

and since Section 1619 was not reauthorized in the Agricultural Act of 2014

(Pub. L. 113-79; 128 Stat. 649 (2014)), the authority of Section 1619 ended

on September 30, 2013 and does not extend to any subsequent period.  If

Congress had intended the authority Section 1619 to extend beyond

September 30, 2013, Congress would have so stated in Section 1619 or in

the American Taxpayer Relief Act of 2012.  Furthermore, Congress could

have reauthorized Section 1619 in the Agricultural Act of 2014 or anytime

since.

(*Id.*, ¶ 14).

80. This claim regarding the expiration of the authority of Section 1619 was also

made at oral arguments (at 22-23), in appellant's principal brief (at 17-18), and in

the petition for a writ of certiorari (at 27-28).

81. The petition for a writ of certiorari also stated:

The District Court failed "the duty of a District Court to adjudicate a

controversy properly before it." *Colorado River Water Conservation Dist.* v.

*United States*, 424 U.S. 800, 813 (1976). The Eighth Circuit failed the duty

of a Court of Appeals to review a controversy properly before it. Cf. *ibid.* The

Eighth Circuit erred in affirming the District Court's failure to grant Bush's

motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c),

[ECF No.] 19, on this claim. Bush CA Principal Brief 47.

(Pet. for Writ of Cert. at 28 (November 27, 2018)).

82. Other than denying this claim in the answer to the complaint, RMA did not defend against this claim. Plaintiff would have "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(ii), in *Bush I* had this claim been adjudicated. (Pet. for Writ of Cert at 28 (November 27, 2018)). A claim not adjudicated is not a "final, valid judgment on the merits." *California Communities Against Toxics* v. *EPA*, 928 F.3d 1041, 1551 (CADC 2019) (citations omitted). Res judicata does not apply to an unadjudicated claim. *Ibid.*

83. Section 701(i) of the American Taxpayer Relief Act of 2012 carved out exceptions to subsection (a). Section 1619 was not included by Congress in Section 701(i) exceptions to subsection (a). Section 1619 is subject to subsection (a) of Section 701 of the American Taxpayer Relief Act of 2012. Pursuant to subsection (a) of Section 701 of the American Taxpayer Relief Act of 2012, the authority of Section 1619 expired on September 30, 2013.

84. The Supreme Court held in *Food Marketing Institute* v. *Argus Leader Media*, 139 S.Ct. 2356 (2019):

In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp.* v. *United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where, as here, that examination yields a clear answer, judges must

stop. *Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 438 (1999). Even those
of us who sometimes consult legislative history will never allow it to be used
to "muddy" the meaning of "clear statutory language." *Milner*, 562 U.S. at
572.

*Id.*, at 2364.

85. The "clear statutory language" is that the authority of Section 1619 expired
on September 30, 2013. *Ibid.* See policy-or-practice claim, including **class action
allegations**, regarding USDA's use of Section 1619 to deny FOIA requests after
September 30, 2013, *infra*, ¶¶ 121-128.

### VIII.  Res Judicata Does Not Apply To The District Court's Analysis Of Attorney's Fees

86. The district court stated:

Although the Court need not address this matter further, the Court
nevertheless will address plaintiff's claim that it is unconstitutional to
award attorneys' fees to prevailing pro se attorney-litigants under Section
552(a)(4)(E), but not to prevailing pro se non-attorney litigants. ([ECF No.]
3, at 11-16). This point, however, is settled. *Coolman v. I.R.S.*, 1999 WL
675319, at *7 (W.D. Mo. July 12, 1999), *aff'd*, No. 99-3963WMSJ, 1999 WL
1419039 (8th Cir. Dec. 6, 1999) ("[S]ince plaintiff is a *pro se* litigant, he may
not recover attorney fees under the FOIA.") *See also Simon*, 2016 WL
5109543, at *5, ("[N]o real dispute between the parties that [plaintiff]
cannot recover attorney's fees because he has litigated this [FOIA] case pro
se."). Other circuits agree. *See Benavides v. Bureau of Prisons*, 993 F.2d

257, 259 (D.C. Cir. 1993) (holding that pro se non-attorney litigants are not

eligible under FOIA for attorney's fees).

(Mem. Op. and Order at 14, ECF No. 30 (N.D.Iowa August 17, 2017).

87. By stating "the Court need not address this matter further," the district court

dismissed this claim due to lack of standing due to plaintiff not having

"substantially prevailed" pursuant to FOIA, 5 U.S.C. § 552(a)(4)(E)(ii). A dismissal

due to lack of standing is not a decision on the merits. *See, e.g., DaimlerChrysler

Corp.* v. *Cuno*, 547 U.S. 332, 354 (2006) ("Because plaintiffs have no standing to

challenge that credit, the lower courts erred by considering their claims against it

on the merits."). Since a dismissal due to lack of standing is not a decision on the

merits, res judicata does not apply to these claims. *California Communities Against

Toxics* v. *EPA*, 928 F.3d 1041, 1551 (CADC 2019).

88. Regardless, the district court misstated both the argument and the law as

noted in plaintiff-appellant's principal brief:

> The district court erred in its analysis of the argument regarding attorney's
>
> fees. The district court also erred in disregarding the constitutional concerns
>
> raised.

(Appellant's Princ. Br. at 36 (CA8 December 21, 2017).

89. The statement by the district court is erroneous as no *pro se* litigant, be

they an attorney-at-law or not, can currently be awarded attorney's fees as

courts have statutorily applied the dictum in *Kay* to FOIA. *Kay*, 499 U. S. at

438 ("The statutory policy of furthering the successful prosecution of

meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case."). In *National Sec. Counselors* v. *CIA*, 811 F.3d 22 (2016), the D.C. Circuit stated:

> In *Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C.Cir.1993), we applied to a *pro se* non-attorney under FOIA the fee eligibility exception for *pro se* individuals that *Kay* had recognized under section 1988. *Id.* at 259-60. Five years later in *Burka*, we again applied *Kay* in the FOIA context and held that attorneys who proceed *pro se* are equally ineligible for FOIA fees. 142 F.3d at 1289-90.

*Id.*, at 29.

(*Ibid.*).

90. The district court erred by ignoring the constitutional concerns that it is a violation of the Due Process Clause of the Fifth Amendment that: 1). a *pro se* litigant can be treated arbitrarily or capriciously, and not be able to obtain a written finding pursuant to 5 U.S.C. § 552(a)(4)(F)(i) as "reasonable attorney fees," 5 U.S.C. § 552(a)(4)(E)(i), are a prerequisite, and 2). an artificial person can possess a right [of attorney-client relationship] that cannot be held by a natural person. The awarding of "reasonable attorney fees," *ibid.*, is a prerequisite to obtaining a written finding pursuant to 5 U.S.C. § 552(a)(4)(F)(i). *Norwood* v. *FAA*, No. 83-2315, slip op. at 20 (W.D. Tenn. Dec. 11, 1991) (finding that when a court denies fees on the ground that the plaintiff is proceeding *pro se*, "the issuance of written findings

> pursuant to 5 U.S.C. § 552(a)(4)(F) would be inappropriate since both
> prerequisites have not been met"), *aff'd in part, rev'd in part on other*
> *grounds*, 993 F.2d 570 (6th Cir. 1993). The text in FOIA clearly requires the
> awarding of "reasonable attorney fees," 5 U.S.C. § 552(a)(4)(E)(i), as a
> prerequisite for the court to issue a written finding due to arbitrary or
> capricious treatment of the requester.

(*Id.*, at 36-37). This same argument was made in the complaint (¶ 21) and in the

petition for a writ of certiorari (at 30-31).

91. The cases cited by the district court and *Kay* were all decided

statutorily, not constitutionally. This case raises a constitutional challenge

to the statutory interpretation that *pro se* litigants cannot be awarded

attorney's fees. The district court erred by ignoring binding Supreme Court

precedent:

> [F]ederal courts sit solely, to decide on the rights of individuals,"
> *Marbury* v. *Madison*, 1 Cranch 137, 170 (1803), and must " 'refrai[n]
> from passing upon the constitutionality of an act . . . unless
> obliged to do so in the proper performance of our judicial
> function, when the question is raised by a party whose interests
> entitle him to raise it,' " *Valley Forge, supra*, at 474 (quoting *Blair* v.
> *United States*, 250 U. S. 273, 279 (1919)).

*Hein* v. *Freedom From Religion Fndn, Inc.*, 551 U.S. 587, 598-599 (2007).

(Appellant's Princ. Br. at 37 (December 21, 2017)).

92. The petitions for rehearing en banc and for a writ of certiorari both stated:

"[L]awfulness under the Constitution is a separate question to be addressed in a constitutional challenge." *FCC* v. *Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009). "A constitutional challenge must be decided based on the constitution, *ibid.*, and cannot be defeated based on a statutory interpretation, *ibid.*"

(Pet. for Rehearing En Banc at 12 (CA8 August 6, 2017); Pet. for Writ of Cert. at 36 (November 27, 2018)).

93. The complaint in *Bush I* stated:

This holding that *pro se* litigants can be treated arbitrarily [or] capriciously with FOIA providing no recourse is a violation of the Due Process Clause of the Fifth Amendment. "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' " *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 638 n. 2 (1975); *Schneider* v. *Rusk*, 377 U. S. 163, 168 (1964); *see also Bolling* v. *Sharpe*, 347 U. S. 497, 499 (1954).

(Comp., ¶ 21, ECF No. 3 (N.D.Iowa December 5, 2016)). This argument was also made in appellant's principal brief (at 39) and in the petition for a writ of certiorari (at 31).

94. "In the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation. Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress and signed by

President Washington one day before the Sixth Amendment was proposed, provided that, 'in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of... counsel....' The right is currently codified in 28 U.S.C. § 1654." *Faretta* v. *California*, 422 U. S. 806, 812-813(1975). "The right of self-representation was guaranteed in many colonial charters and declarations of rights. These early documents establish that the 'right to counsel' meant to the colonists a right to choose between pleading through a lawyer and representing oneself." *Id.* at 828. "[T]here is no evidence that the colonists and the Framers ever doubted the right of self-representation, or imagined that this right might be considered inferior to the right of assistance of counsel." *Id.* at 832.

(*Id.*, ¶ 22). This citation was also provided in appellant's principal brief (at 34) and in the petition for a writ of certiorari (at 31-32).

95. "This Court's past recognition of the right of self-representation, the federal-court authority holding the right to be of constitutional dimension, and the state constitutions pointing to the right's fundamental nature form a consensus not easily ignored." [*Faretta*, 422 U.S.] at 817. "This Court has often recognized the constitutional stature of rights that, though not literally expressed in the document, are essential to due process of law in a fair adversary process." [*Faretta*, 422 U.S.] at 819 n. 15.

(Appellant's Princ. Br. at 34 (CA8 December 21, 2017)).

41

96.    Counsel    is    a    synonym    for    attorney.    http://www.merriam-
webster.com/thesaurus/counsel    (last    accessed    on    November    14,
2016).    "[T]he Concessions and Agreements of West New Jersey, in 1677,
provided, for all cases, civil and criminal, 'that no person or persons shall be
compelled to fee any attorney or councillor to plead his cause, but that all
persons have free liberty to plead his own cause, if he please.'"    *Faretta*,
*supra*, at 828 n. 37.    Counsel and attorney would have been known to be
synonymous to the colonists and the Framers, the same as now.

(Comp., ¶ 23, ECF No. 3 (N.D.Iowa December 5, 2016; Pet. for Writ of Cert. at 32-33
(November 27, 2018)).

97. The holding that only litigants represented by independent counsel can
have the Court issue written findings if the agency has acted arbitrarily [or]
capriciously means that FOIA requests initiated by requesters represented
by independent counsel will be given preferential treatment to those
initiated by all other requesters as agency personnel know there are no
repercussions for arbitrarily [or] capriciously treating FOIA requests
received from requesters who proceed *pro se*.    It is unconstitutional under
the Due Process Clause of the Fifth Amendment for the Court to subjugate
the "right of self-representation," *Faretta*, *supra*, at 828, to the right of
assistance by independent counsel.    "And whatever else may be said of
those who wrote the Bill of Rights, surely there can be no doubt that they
understood the inestimable worth of free choice."    *Faretta, supra*, at 833-

834. The "inestimable worth of free choice," *Faretta, supra*, at 833-834, including the "right of counsel" meaning "a right to choose between pleading through a lawyer and representing oneself," *Faretta, supra*, at 828, is the bedrock foundation upon which this nation was built and flows through the spirit of the Constitution.

(Comp., ¶ 24, ECF No. 3 (December 5, 2016)).

98. "The Circuits are in agreement, however, on the proposition that a *pro se* litigant who is not a lawyer is not entitled to attorney's fees." *Kay* v. *Erlher*, 499 U. S. 432, 435 (1991). "Petitioners do not disagree with these cases... and we are also satisfied that they were correctly decided." *Ibid.*

(*Id.*, ¶ 25).

99. Plaintiff contends this holding in *Kay*, when applied to FOIA cases, violates the Due Process Clause of the Fifth Amendment as the awarding of attorney fees is a prerequisite for the Court to issue written findings under FOIA due to arbitrary [or] capricious treatment.

(*Id.*, ¶ 26).

100. Plaintiff wonders who are the attorneys-at-law interested in pursuing meritorious FOIA claims from requesters who lack the resources to pay said attorneys-at-law and, even if successful in court, attorney fees may not be awarded to prevailing [litigants to pay their] attorneys-at-law?

(*Id.*, ¶ 27).

101. "The question then is whether a lawyer who represents himself should be treated like other *pro se* litigants or like a client who has had the benefit of the advice and advocacy of an independent attorney. We do not think either the text of the statute or its legislative history provides a clear answer." *Kay, supra*, at 435. The text in FOIA clearly requires the awarding of reasonable attorney fees and other litigation costs as prerequisites for the issuance of written findings pursuant to 5 U.S.C. § 552(a)(4)(F)(i). To avoid violations under the Due Process Clause of the Fifth Amendment, the Court can only conclude that a *pro se* litigant is an attorney *pro se* and each *pro se* litigant possesses the requisite attorney-client relationship with oneself. Plaintiff contends attorney fees should commence with the inception of legal work at any point in the FOIA process, including prior to making an official FOIA request. A litigant who performs legal work to resolve a concern in an attempt to avoid court should not be penalized by not being awarded attorney fees for such an effort if the concern results in a court case and said litigant prevails on that very point. Furthermore, to not award successful *pro se* litigants attorney fees violates the principle of equal pay for equal work. Clearly, the work has been performed and the results speak for themselves.

(*Id.*, ¶ 30).

102. If a natural person cannot have an attorney-client relationship with oneself, then no artificial person such as a corporation or other entity can

44

have an attorney-client relationship with itself. In *Baker & Hostetler LLP*
v. *U. S. Department of Commerce*[, 473 F.3d 312,] the D.C. Circuit, relying
on dictum in *Kay*, held that a law firm representing itself is eligible for
attorney fees. *Baker & Hostetler LLP*, 473 F.3d at 324 (D.C. Cir. 2006).
"[A]n organization is not comparable to a *pro se* litigant, because the
organization is always represented by counsel, whether in-house or *pro
bono*, and thus, there is always an attorney-client relationship." *Kay*, *supra*,
at 436 n. 7.

(*Id.*, ¶ 33).

103. "[T]here is no evidence that the colonists and the Framers ever doubted
the right of self-representation, or imagined that this right might be
considered inferior to the right of assistance of counsel." *Faretta* v.
*California*, 422 U. S. 806, 832 (1975). If an individual representing oneself
is not eligible for attorney fees then a corporation or other entity
representing itself via in-house counsel is not eligible for attorney fees.
Whether natural or artificial, a person is a person under the Constitution,
as interpreted by the Court. It is unconstitutional under the Due Process
Clause of the Fifth Amendment for an artificial person to possess a right [of
attorney-client relationship] that cannot be held by a natural person.

(*Id.*, ¶ 34).

104. Plaintiff's brief in resistance to the motion for summary judgment stated:

In the Trial Management Order this Court states, "Accordingly, wherever reference is made herein to an attorney or counsel, it also means a party who is representing himself or herself." [ECF No. 26-3, at] 11 n. 2.  This Court is stating that a *pro se* litigant is an attorney *pro se*.

(Plaint. Br. in Resist. to Mot. for Sum. Judg., ECF No. 26 at 12 (N.D.Iowa June 21, 2017); Appellant's Princ. Br. at 39 (December 21, 2017)).

105. The following Federal Rules of Civil Procedure allow the awarding of attorney fees to curb abuses of the judicial process: 4(d)(2)(B), 11(c)(2), 11(c)(4), 16(f)(2), 26(g)(3), 30(d)(2),37(a)(5)(A), 37(a)(5)(B), 37(a)(5)(C), 37(b)(2)(C), 37(c)(1)(A), 37(c)(2),37(d)(3), 37(f) and 56(h). [Northern District of Iowa] Local Rule16(i) also allows the awarding of attorney fees.  However, since *pro se* litigants are not allowed the awarding of attorney fees, ([Comp., ¶ 25, ECF No. 3]) *pro se* litigants cannot receive the full measure of the deterrent from being subjected to abuses of the judicial process by opposing independent counsel.  "Sanctions are 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Chrysler Corp.* v. *Carey*, 186F.3d 1016,1022 (8th Cir. 1999), quoting *National Hockey League* v. *Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  "The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the

most appropriate sanction under the circumstances." *Ibid.* By not allowing

attorney fees to be awarded to *pro se* litigants, the district court cannot

"exercise its discretion to choose the most appropriate sanction under the

circumstance," *ibid.*, as one of the appropriate sanctions in the form of

attorney fees is unavailable. Pursuant to Fed. R. Civ. P. 11(b) a *pro se*

litigant can be subjected to a pleading, written motion, or other paper

presented for any improper purpose, such as to harass, cause unnecessary

delay, or needlessly increase the cost of litigation; however, since a *pro se*

litigant cannot be awarded attorney fees, a *pro se* litigant is denied equal

protection under the law. This is a violation of the Due Process Clause of

the Fifth Amendment as are all of the aforementioned federal and local

rules cited in which attorney fees are an appropriate sanction, yet

unavailable to *pro se* litigants. *Pro se* litigants could be sanctioned for

attorney fees should *pro se* litigants perpetrate at opposing independent

counsel the very same abuses of the judicial process that, if directed at *pro*

*se* litigants by opposing independent counsel, attorney fees would be

unavailable to *pro se* litigants. This represents manifest unequal

protection, including a violation of the principle of equal pay for equal work.

(Plaint. Br. in Resist. to Mot. for Sum. Judg., ECF No. 26 at 12-13). This argument

was also made in appellant's principal brief (at 39-41) and in the petition for a writ

of certiorari (at 33-34).

106. However, Defendants via counsel, the Department of Justice, are actually advocating for the expansion of unequal protection, presumably as a manifest destiny. "*Pro se* plaintiffs may not recover attorney fees under FOIA," citing "*Burka v. United States Dep't of Health and Human Services*, 142 F.3d 1286, 1288 (D.C.Cir. 1998)." ([ECF No.] 20[-1] at 12). "Moreover, Plaintiff seeks these records for a private purpose he is not entitled to fees or costs under FOIA. *See Cotton v. Heyman*, 63 F.3d 1115, 1123 (D.C. Cir. 1995) (declining an award of fees and costs after finding no public benefit from FOIA release …)." [(]*Ibid.*[).] Defendants via counsel, the Department of Justice, after having been informed of the unequal protection concerns of *pro se* litigants who have been treated arbitrarily or capriciously and who cannot be awarded the prerequisite attorney fees for the court to order a written finding in accordance with 5 U.S.C. § 552(a)(4)(F)(i), ask this Court to expand unequal protection beyond *pro se* litigants to include litigants represented by independent counsel and for which there is no public benefit to FOIA release of records. In other words, Defendants via counsel, the Department of Justice, are contending the only requesters who cannot be treated arbitrarily or capriciously under FOIA, and be denied the full protection FOIA provides by having the court issue a written finding in accordance with 5 U.S.C. § 552(a)(4)(F)(i), are requesters represented by independent counsel, including artificial persons represented by in-house counsel, and for which there is a public benefit to FOIA release of records.

Defendants via counsel, the Department of Justice, are advocating for
massive, wholesale violations of requesters rights under FOIA and of the
equal protection guaranteed by the Due Process Clause of the Fifth
Amendment. This is "discrimination that is so unjustifiable as to be
violative of due process," *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 638 n. 2
(1975) (internal citation omitted).

(*Id.*, at 13-14). This argument was also made in appellant's principal brief (at 41-42)
and in the petition for a writ of certiorari (at 34-35).

107. Plaintiff-appellant's principal brief stated:

"[O]ur task is not to destroy the Act if we can, but to construe it, if
consistent with the will of Congress, so as to comport with constitutional
limitations." *Civil Service Comm'n* v. *Letter Carriers*, 413 U.S. 548, 571
(1973). "The elementary rule is that every reasonable construction must be
resorted to, in order to save a statute from unconstitutionality." *Skilling* v.
*United States*, 561 U. S. 358, 406 (2010) (quoting *Hooper* v. *California*, 155
U.S. 648, 657 (1895)).

(Appellant's Princ. Br. at 38 (CA8 December 21, 2017)).

108. "We stated in *Helvering* v. *Hallock*, 309 U.S. 106, 119, that 'It would
require very persuasive circumstances enveloping Congressional silence to
debar this Court from reexamining its own doctrines.' It is at best
treacherous to find in congressional silence alone the adoption of a
controlling rule of law. We do not think under the circumstances of this

legislative history that we can properly place on the shoulders of Congress
the burden of the Court's own error." *Girouard* v. *United States*, 328 U.S.
61, 69-70 (1946).

(*Ibid.*).

109. The district court stated, "So the party in that case would not make any
money off it.  The  lawyer would be compensated, but the party would not
be." (Transcript 26).

(*Ibid.*).

110. Plaintiff responded at oral arguments, "I'm not so sure. I think there's an
argument but I don't have the case in front of me that a litigant can hire an
attorney and have a fee agreement with that attorney and they are not bound by
that fee agreement. They can be awarded attorney's fees in excess of that fee
agreement and then basically just pay their attorney that fee agreement I believe is
my recollection of that case." (Transcript at 26, ECF No. 37 (N.D.Iowa October 30,
2017)).

111. Plaintiff-appellant's principal brief stated:

The district court's statement is contrary to binding Supreme Court
precedent. "Thus it is that a plaintiff's recovery will not be reduced by what
he must pay his counsel." *Blanchard* v. *Bergeron*, 489 U. S. 87, 94 (1989).

(Appellant's  Princ. Br. at 42 (CA8 December 21, 2017)).

112. Under current statutory construction, the Court has no objection to
providing "reasonable attorney fees," 5 U.S.C. § 552(a)(4)(E)(i), to a litigant

who performed no legal work. However, the Court finds it objectionable to provide "reasonable attorney fees," *ibid.*, to a *pro se* litigant who actually performed legal work. It is inconceivable that Congress could have ever intended such an irrational construction. [*See Long* v. *IRS*, 742 F.2d 1173, 1181 (CA9 1984).] The Court cannot "properly place on the shoulders of Congress the burden of the Court's own error," *Girouard, supra*, at 69-70. (*Ibid.*).

113. "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley* v. *Valeo*, 424 U. S. 1, 93 (1976); *see also Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 638 n. 2 (1975). (*Id.*, at 34).

114. The Eighth Circuit has held: "The doctrine of substantive due process protects unenumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment. See Washington v. Glucksberg, 521 U.S. 702, 720, (1997). A fundamental right is one which is, 'objectively, "deeply rooted in this Nation's history and tradition," ' id. at 720-21, 117 S.Ct. 2258 (quoting Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503 (1977) (plurality opinion)), 'and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [it] were sacrificed," ' id. at 721, (quoting Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937)). Legislation infringing a fundamental right must survive strict scrutiny — the law must be 'narrowly tailored to serve a compelling state

interest.' Id. (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (internal quotation marks omitted)." *Gallagher* v. *City of Clayton*, 699 F.3d 1013, 1017 (8th Cir. 2012).

(*Id.*, at 35).

115. "The Fourteenth Amendment guarantees '[s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.' *Weiler* v. *Purkett*, 137 F.3d 1047, 1051 (8th Cir.1998) (en banc). To that end, the Fourteenth Amendment prohibits 'conduct that is so outrageous that it shocks the conscience or otherwise offends "judicial notions of fairness, [or is] offensive to human dignity." ' *Id.* (quoting *Weimer* v. *Amen*, 870 F.2d 1400, 1405 (8th Cir.1989)) (alteration in original)." *Moran* v. *Clarke*, 296 F.3d 638, 643 (8th Cir. 2002).

(*Ibid.*).

116. It "shocks the conscience," *Moran*, 296 F.3d at 643 (citation omitted), and "offends judicial notions of fairness," *ibid.* (citation omitted), that self-representation is now considered inferior to the right of assistance of counsel, *Kay, supra*, at 438, considering "there is no evidence that the colonists and the Framers ever doubted the right of self-representation, or imagined that this right might be considered inferior to the right of assistance of counsel," *Faretta*, 422 U.S. at 832. It also "shocks the conscience," *Moran*, 296 F.3d at 643 (citation omitted), and "offends judicial

notions of fairness," *ibid.* (citation omitted), that an artificial person can possess a right [of attorney-client relationship] that cannot be held by a natural person, ([Comp., ECF No.] 3, at 16 ¶ 34).

(*Id.*, 42-43).

117. Self-representation is a fundamental right. (*Id.*, at 34). Plaintiff contends in a constitutional challenge that applying *Kay* to FOIA violates the Due Process Clause of the Fifth Amendment by rendering FOIA unconstitutional on its face, as attorney's fees are a prerequisite for the court to issue a written finding due to agency personnel acting arbitrarily or capriciously with respect to the withholding as reasoned, *ante*, ¶¶ 90, 93, 97, 106. Plaintiff requests an injunction against the United States from applying *Kay* to FOIA. The Supreme Court "ha[s] held that if the arguments and evidence show that a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is 'proper.' " *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) (quoting *Citizens United* v. *Federal Election Comm'n*, 558 U.S. 310, 333 (2010)).

118. Plaintiff contends the D.C. Circuit was correct in holding prior to *Kay* "that *pro se* non-attorney litigants are eligible for reasonable attorney fees under FOIA in cases in which they have substantially prevailed in claims against the Government." *Benavides* v. *Bureau of Prisons*, 993 F.2d 257 (CADC 1993) (citing *Cox* v. *United States Dep't of Justice*, 601 F.2d 1, 5-6 (CADC 1979) (*pro se* layperson eligible for attorney fees)). However, the D.C. Circuit's requirement of the public benefit from the case, the commercial benefit to the plaintiff, or the nature of the

plaintiff's interest in the records, *Morley* v. *CIA*, 719 F.3d 689, 690 (2013) (per curiam), either each as an individual, or as a collective balancing test, prerequisite for attorney's fees is as problematic constitutionally as denying attorney's fees based on the *pro se* status of the litigant. *See Morley* v. *CIA*, 894 F. 3d 389, 393, n. 1 (CADC 2018) (doubting that "eliminating the possibility of attorney's fees for certain prevailing plaintiffs" "is a proper interpretation of the statute" and stating that the D.C. Circuit en banc should "eliminate the unfair discrimination against certain prevailing plaintiffs that results from the first three factors").

119. "By its terms, FOIA's fees provision applies to all 'complainants' who have 'substantially prevailed.' " *Baker & Hostetler LLP* v. *U.S. Dep't of Commerce*, 473 F.3d 312, 324 (CADC 2006). "Indeed, the *primary* purpose of the FOIA attorney fee provision is virtually identical to the purpose underlying section 1988." *Benavides*, 993 F.2d at 260. Therefore, the Court should adopt for FOIA the section 1988 standard that a "plaintiff who prevails in a lawsuit…will have helped enforce that statute exactly as Congress hoped and…'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " *Shelby County* v. *Lynch*, 799 F.3d 1173, 1180 (CADC 2015) (quoting *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).

120. All of the time and resources expended during *Bush I* are considered subsumed in this case. There is no this case without *Bush I.*

### IX.     USDA Has A Policy Or Practice Of Violating FOIA Due To Using An Expired Statute Pursuant To Exemption 3 To Deny Requests

121. When Congress passed the extension of the Food, Conservation and Energy Act of 2008 in Section 701 of the American Taxpayer Relief Act of 2012, USDA was on notice that the authority of Section 1619 would expire on September 30, 2013. When USDA, including RMA, failed to defend against this claim in *BUSH I*, USDA had absolute awareness that – by using an expired statute pursuant to FOIA Exemption 3 to deny requests – USDA was "following an 'impermissible practice.' " *Payne Enters., Inc.* v. *United States*, 837 F.2d 486, 491 (CADC 1988) (quoting *Better Gov't Ass'n* v. *Dep't of State*, 780 F.2d 86, 91 (CADC 1986)).  Plaintiff "will suffer 'continuing injury due to this practice.' " *Ibid.* By using an expired statute as FOIA Exemption 3 to deny requests, USDA's "policy or practice will impair [plaintiff's] lawful access to information in the future." *Payne*, 837 F.2d at 491 (citing *Better Gov't Ass'n*, 780 F.2d at 90-92). Plaintiff has pending FOIA requests with USDA regarding: (1) "geospatial information," 7 U.S.C. §8791(b)(2)(B), about agricultural land  and (2) a "specific data gathering site," 7 U.S.C. §8791(b)(4)(B)(ii).

122. While RMA raised Section 1619 as a defense in denying the administrative appeal, *ante*, ¶ 77, RMA waived, forfeited or both waived and forfeited Section 1619 as a defense in district court in *Bush I.* (Answer at p. 9, ECF No. 11 (N.D.Iowa February 7, 2017). "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Payne*, 837 F.2d at 491 (citing *United States* v. *W.T. Grant Co.*, 345 US 629, 632 (1953) (citations omitted)).

## Class Action Allegations

123. Various agencies of USDA have used Section 1619 to deny FOIA requests 230 times in 2014.[4] Various agencies of USDA have used Section 1619 to deny FOIA requests 213 times in 2015.[5] Various agencies of USDA have used Section 1619 to deny FOIA requests 266 times in 2016.[6] Various agencies of USDA have used Section 1619 to deny FOIA requests 359 times in 2017.[7] Various agencies of USDA have used Section 1619 to deny FOIA requests 550 times in 2018.[8] By its own admission, USDA has used the expired authority of Section 1619 to deny FOIA requests at least 1,618 times, a sum which does not include the number of times Section 1619 was used to deny FOIA requests from October 1, 2013 – December 31, 2013, and from January 1, 2019, until the present.

124. All of the prerequisites for a class action are met pursuant to FED. R. CIV. P. 23(a) which provides: One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

---

[4]https://www.dm.usda.gov/foia/docs/USDA%20FY14%20FOIA%20Annual%20Report%202.10.15.docx at 6-7 (last accessed on December 2, 2019).

[5]https://www.dm.usda.gov/foia/docs/F%20USDA%20FY%202015%20Final.docx at 5-6 (last accessed on December 2, 2019).

[6]https://www.dm.usda.gov/foia/docs/USDA%20FY16%20Final.docx    at    4    (last accessed on December 2, 2019).

[7]https://www.dm.usda.gov/foia/docs/USDA+FY17+(Final).docx at 5-6 (last accessed on December 2, 2019).

[8]https://www.dm.usda.gov/foia/docs/USDAFY18Final.docx at 6-7 (last accessed on December 2 , 2019).

(3) the claims or defenses of the representative parties are typical of the claim

or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests

of the class.

125. The condition for maintaining the class action is satisfied pursuant to FED. R. CIV. P. 23(b) which provides: "A class action may be maintained if Rule 23(a) is satisfied and if" "(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." A FOIA class action was recently certified. *Nightingale* v. *U.S. Citizenship and Immigration Servs., et al.*, No. 3:19-cv-03512-WHO, ECF No. 47 (N.D.Cal. October 15, 2019). Plaintiff William Bush, like all other members of the class, has been subjected to USDA's use of an expired statute at the administrative level to deny a FOIA request; therefore, Plaintiff William Bush is an adequate representative of the class pursuant to LCvR 23.1(a)(2)(iii).

126. "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne*, 837 F.2d at 494 (citing *Renegotiation Bd.* v. *Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19-20 (1974) ("With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court.")).

Congress did not intend for the IRS, or any other agency, to use the FOIA offensively to hinder the release of non-exempt documents. The appellants

57

have fully complied with the administrative scheme. It was the IRS' abuse of this scheme that forced the appellants to bring several lawsuits to obtain release of the documents.... These unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.

*Ibid.* (quoting *Long* v. *IRS*, 693 F.2d 907, 910 (CA9 1982)).

127. The D.C. Circuit held in *Judicial Watch* v. *U.S. Dep't of Homeland Sec.*, 895 F.3d 770 (CADC 2018):

When injunctive relief is sought, "the necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Factors to be "considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations." *Id.* In the FOIA context, "the court's prime consideration should be the effect on the public of disclosure or non-disclosure." *Long*, 693 F.2d at 909 (citing *W.T. Grant*, 345 U.S. at 633).

*Id.*, at 783.

128. USDA's use of an expired statute pursuant to FOIA Exemption 3 at least 1,618 times to deny requests proves "cognizable danger of recurrent violation[s]." *Ibid.* Therefore, the standard for injunctive relief has more than been met. *Ibid.*

X.    **USDA Has A Policy Or Practice Of Violating FOIA Due To Noncompliance With The Legal Standard For Agency Records Which Results In The Performance Of Inadequate Searches**

129. The Affidavit in *Bush I* stated, "RMA only obtains information from AIPs that is deemed necessary to the operation of the crop insurance program. Only those specific records are maintained by RMA and are considered agency records for FOIA purposes." (RMA Mot. for Sum. Judg. Affidavit ¶ 7, ECF 20-3 (N.D.Iowa May 8, 2017)).

130. Plaintiff has proved, *ante*, ¶¶ 17-27, that the APH records, even if stored on Approved Insurance Provider's information systems, are agency records. USDA – by its own sworn admission and as demonstrated by its actions – is "following an 'impermissible practice,'" *Payne*, 837 F.2d at 491 (quoting *Better Gov't Ass'n*, 780 F.2d at 91), of violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches. Plaintiff "will suffer 'continuing injury due to this practice.'" *Ibid.* USDA's "*policy or practice will impair* [plaintiff's] lawful access to information in the future." *Ibid.* (citing *Better Gov't Ass'n*, 780 F.2d at 90-92). Plaintiff has pending FOIA requests with USDA for the aggregation of the APH records for 2019. The standard for injunctive relief is met as reasoned, *ante*, ¶¶ 126-127.

XI.    **USDA Has A Policy Or Practice Of Violating FOIA By Not Taking Affirmative Steps Toward Maintaining Agency Records In Reproducible Forms Which Results In Agency Records Not Being Readily Reproducible**

131. FOIA "must be read as requiring an agency to take affirmative steps toward maintaining records in 'reproducible' [forms] such that they are 'readily

reproducible' when sought out by FOIA requesters." *Scudder* v. *CIA*, 25 F. Supp. 3d 19, 34 (D.D.C. 2014). USDA – by its own sworn admission, *ante*, ¶ 129, and as demonstrated by its actions – is "following an 'impermissible practice,' " *Payne*, 837 F.2d at 491 (quoting *Better Gov't Ass'n*, 780 F.2d at 91), of violating FOIA by not "tak[ing] affirmative steps toward maintaining records in 'reproducible' [forms] such that they are 'readily reproducible' when sought out by FOIA requesters," *Scudder*, F. Supp. 3d at 34. Plaintiff "will suffer 'continuing injury due to this practice.' " *Payne*, 837 F.2d at 491 (quoting *Better Gov't Ass'n*, 780 F.2d at 91). USDA's "*policy or practice* will impair [Plaintiff's] lawful access to information in the future." *Ibid.* (citing *Better Gov't Ass'n*, 780 F.2d at 90-92). Plaintiff has pending FOIA requests with USDA for the aggregation of the APH records for 2019. The standard for injunctive relief is met as reasoned, *ante*, ¶¶ 126-127.

### XII. USDA Has A Policy Or Practice Of Violating FOIA Due To Using An Administrative Determination Requiring Aggregation To The County Level To Comply With 7 U.S.C. §1502(c) Of The Federal Crop Insurance Act Pursuant To Exemption 3

132. The Affidavit in *Bush I* stated that RMA "determined 15 records within a county to be a reasonable number of records for crop insurance that would balance transparently providing data to the public while ensuring statutory protections of producer provided information." (RMA's Mot. for Sum. Judg. Affidavit ¶ 23, ECF No. 20-3 (N.D.Iowa May 8, 2017)).

133. Congress did not require aggregation to the county level in the Federal Crop Insurance Act. 7 U.S.C. §1502(c). Requiring aggregation to the county level is an administrative determination and not a legislative determination. *Ibid.* "Congress

intended exemption from the FOIA to be a legislative determination and not an administrative one." *Wisc. Project on Nuclear Arms Control* v. *U.S. Dep't of Commerce,* 317 F.3d 275, 280 (CADC 2003) (quoting *Irons & Sears* v. *Dann,* 606 F.2d 1215, 1220 (CADC 1979) (footnote omitted)). "Exemption 3 takes literally the requirement that disclosure prevail absent 'clearly delineated statutory language,' *Rose,* 425 U.S. at 361." *Ibid.*

134. USDA – by its own sworn admission and as demonstrated by its actions – is "following an 'impermissible practice,' " *Payne,* 837 F.2d at 491 (quoting *Better Gov't Ass'n,* 780 F.2d at 91), of violating FOIA by using an administrative determination that records must be aggregated to the county level to comply with 7 U.S.C. §1502(c) of the Federal Crop Insurance Act pursuant to Exemption 3. Plaintiff "will suffer 'continuing injury due to this practice.' " *Ibid.* USDA's "*policy or practice* will impair [Plaintiff's] lawful access to information in the future." *Ibid.* (citing *Better Gov't Ass'n,* 780 F.2d at 90-92). Plaintiff has pending FOIA requests with USDA for the aggregation of the APH records for 2019. The standard for injunctive relief is met as reasoned, *ante,* ¶¶ 126-127.

## RELIEF REQUESTED

135. WHEREFORE, Plaintiff William Bush respectfully requests this Court to:

1. Declare the APH records are agency records, even if stored on the information systems of Approved Insurance Providers;

2. Order USDA to aggregate the records by section as requested – including a record count of the number of records aggregated by section – and provide to plaintiff;

3. Declare no search fee for can be charged plaintiff pursuant to 5 U.S.C. §552(a)(4)(A)(viii)(I) as USDA failed to comply with the applicable time limits stated in 5 U.S.C. §552(a)(6)(A)(i) for responding to the request;

4. Declare the authority of Section 1619 of the Food, Conservation and Energy Act of 2008 expired on September 30, 2013, pursuant to Section 701(a) of the American Taxpayer Relief Act of 2012;

5. Declare USDA has a policy or practice of violating FOIA due to using an expired statute – Section 1619 of the Food, Conservation and Energy Act of 2008 (codified at 7 U.S.C. §8791) – pursuant to Exemption 3 to deny requests;

6. Enjoin USDA's policy or practice of violating FOIA due to using an expired statute – Section 1619 of the Food, Conservation and Energy Act of 2008 (codified at 7 U.S.C. §8791) – pursuant to Exemption 3 to deny requests;

7. Certify the class pursuant to FED. R. CIV. P. 23(c) due to USDA's policy or practice of violating FOIA due to using an expired statute – Section 1619 of the Food, Conservation and Energy Act of 2008 (codified at 7 U.S.C. §8791) – pursuant to Exemption 3 to deny requests;

8. Declare USDA has a policy or practice of violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches;

9. Enjoin USDA's policy or practice of violating FOIA due to noncompliance with the legal standard for agency records which results in the performance of inadequate searches;

10. Declare USDA has a policy or practice of violating FOIA by not taking affirmative steps toward maintaining agency records in reproducible forms which results in agency records not being readily reproducible;

11. Enjoin USDA's policy or practice of violating FOIA by not taking affirmative steps toward maintaining agency records in reproducible forms which results in agency records not being readily reproducible;

12. Declare USDA has a policy or practice of violating FOIA due to using an administrative determination that records must be aggregated to the county level to comply with 7 U.S.C. §1502(c) of the Federal Crop Insurance Act pursuant to exemption 3;

13. Enjoin USDA's policy or practice of violating FOIA due to using an administrative determination that records must be aggregated to the county

62

level to comply with 7 U.S.C. §1502(c) of the Federal Crop Insurance Act pursuant to exemption 3;

14. Declare plaintiff has substantially prevailed in accordance with 5 U.S.C. § 552(a)(4)(E)(ii);

15. Declare a *pro se* litigant is an attorney *pro se*, be they an attorney-at-law or not;

16. Declare self-representation is a fundamental right;

17. Declare *Kay* v. *Ehrler*, 499 U.S. 432 (1991), in denying attorney fees to *pro se* litigants, provides no controlling authority in FOIA cases as FOIA clearly requires the awarding of attorney fees to issue a written finding in accordance with 5 U.S.C. §552(a)(4)(F)(i), and applying *Kay* to FOIA violates *pro se* litigants rights under the Due Process Clause of the Fifth Amendment when agency personnel have acted arbitrarily or capriciously with respect to the withholding;

18. Enjoin the United States from applying *Kay* v. *Ehrler*, 499 U.S. 432 (1991), to FOIA cases;

19. Declare the public benefit from the case, the commercial benefit to the plaintiff, or the nature of the plaintiff's interest in the records either each as an individual, or as a collective balancing test, prerequisite to awarding attorney's fees violates the Due Process Clause of the Fifth Amendment, as attorney's fees are a prerequisite for a court to issue a written finding when agency personnel have acted arbitrarily or capriciously with respect to the withholding;

20. Enjoin the United States from requiring the public benefit from the case, the commercial benefit to the plaintiff, and the nature of the plaintiff's interest in the records either each as an individual, or as a collective balancing test, prerequisite to awarding attorney's fees in FOIA cases;

21. Declare it is unconstitutional under the Due Process Clause of the Fifth Amendment for an artificial person to possess the right of attorney-client relationship when said right cannot held by a natural person;

22. Declare the standard for attorney's fees for prevailing parties as held in *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968), applies to FOIA cases;

23. Declare USDA personnel have acted arbitrarily or capriciously with respect to the withholding pursuant to 5 U.S.C. §552(a)(4)(F)(i);

24. Issue a written finding pursuant to 5 U.S.C. §552(a)(4)(F)(i);

25. Declare plaintiff is eligible and entitled to reasonable attorney's fees and other litigation costs pursuant to 5 U.S.C. §552(a)(4)(E);

26. Retain jurisdiction of this cause of action until defendants have complied in full with any and all orders issued by the Court;

27. Expedite this action in every way pursuant to 28 U.S.C. §1657(a); and

28. Grant such other relief as the Court may deem just and proper, including pursuant to FED. R. CIV. P. 54(c). *Whole Woman's Health*, 136 S. Ct. at 2307 ("The Federal Rules of Civil Procedure state that (with an exception not relevant here) a 'final judgment *should* grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.' Rule 54(c).") (emphasis added).

Dated: January 6, 2020

Respectfully submitted,

William Bush
*Pro Se*
945 530TH Street
Cleghorn, IA  51014
(712) 229-9670
bushwllm@gmail.com